**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-**

| | | |
|---|---|---|
| MARCO ANTONIO RODRIGUEZ | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-05-226 |
| | § | |
| NATHANIEL QUARTERMAN,[1] | § | |
| Director, Texas Department of Criminal | § | |
| Justice, Correctional Institutions Division, | § | |
| Respondent. | § | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Pending before the Court is a Petition for Writ of Habeas Corpus (Docket No. 3) filed by

Petitioner, Marco Antonio Rodriguez ("Petitioner") pursuant to 28 U.S.C. § 2254.  Also pending

before the Court is Respondent's Motion for Summary Judgment (Docket No. 20).  For the

reasons stated below it is recommended that the Respondent's motion be granted.

**I.  Background**

On June 5, 1999, Petitioner was indicted for the state felony offense of murder.

Petitioner entered a plea of not guilty and proceeded to trial.  On October 29, 1999, Petitioner

was found guilty after a jury trial and sentenced to life imprisonment.  *The State of Texas v.*

*Marco Antonio Gonzalez Rodriguez*, Criminal Case No. 99-CR-1044-B, 138th Judicial District

Court, Cameron County, Texas.  Petitioner filed an appeal arguing that the trial court erred by:

(1) not admitting evidence of an extraneous offense committed by the victim; and (2) admitting

evidence during the punishment phase of an extraneous aggravated assault.  Petitioner's

---

[1] The previous named respondent in this action was Doug Dretke.  Effective June 1, 2006, Nathaniel
Quarterman succeeded Dretke as Director of the Texas Department of Criminal Justice, Correctional Institutions
Division.  Under Rule 25(d)(1) for the Federal Rule of Civil Procedure, Quarterman is automatically substituted as a
party.

conviction was affirmed by the Thirteenth Court of Appeals of Texas in an unpublished decision on June 21, 2001.  *Rodriguez v. State*, No. 13-99-718-CR (Tex.App.--Corpus Christi, Jun. 12, 2001, pet. ref'd).   Petitioner filed a Petition for Discretionary Review ("PDR") with the Texas Court of Criminal Appeals on September 25, 2001, which was refused on November 7, 2001. Petitioner did not file for re-hearing, nor did he file a petition for writ of certiorari with the U.S. Supreme Court.

On October 21, 2002, Petitioner filed an application for state writ of habeas corpus challenging the instant conviction.  *Ex Parte Rodriguez*, Case No.  WR–52,811-02.  Petitioner alleged fourteen grounds of error: five errors by the trial court; four errors of prosecutorial misconduct; and five instances of ineffective assistance of counsel.  The summary of Petitioner's habeas arguments are below:

(1) The trial court committed reversible error when it failed to secure an interpreter when requested by counsel during the entire proceedings so that Applicant could have assisted in his defense or understand the proceedings.

(2) The trial court committed fundamental error when it commented on the weight of the evidence and prejudiced the defense.

(3) The trial court denied Petitioner his right to consultation from the Mexican Consulate.

(4) The trial court committed reversible error in admitting highly prejudicial and inflammatory photographs and testimony which contained graphic photos of the deceased's heart after it was removed from the body.

(5) The trial court committed reversible error when it failed in include in the charge to the jury, during the punishment phase of the trial, his timely filed application for probation/community supervision.

(6) The State prosecutors coerced a defense witness into testifying falsely and withholding exculpatory evidence in denial of fair trial.

(7) The State prosecutor's opening statement was improper because it was unnecessarily specific regarding the facts of the case and consisted of misstatements of the facts.

(8) The State prosecutor's closing argument was improper regarding an intoxication defense as there was no evidence that Petitioner was drinking the night of the incident.

(9) State prosecutors made improper and prejudicial arguments in their interpretation of Article 42.12(e) regarding Petitioner's eligibility for community supervision.

(10) Trial counsel was ineffective for failing to impeach the State's witness.

(11) Trial counsel was ineffective for failing to object to the State's Exhibit # 40, a diagram of the crime scene evidence.

(12) Trial counsel was ineffective in failing to secure a potential material fact witness, Elvia Lozano, who had evidence that one of the State's witnesses had committed perjury.

(13) Trial counsel was ineffective for failing to conduct an investigation into the DNA exculpatory evidence supporting his self defense claim.

(14) Appellate counsel was ineffective on direct appeal in failing to raise meritorious errors that were timely objected to.

On June 18, 2003, the Texas Court of Criminal Appeals remanded the case to the trial court for an evidentiary hearing on the issue of ineffective assistance of counsel.  An evidentiary hearing was conducted by Judge Garza on November 13, 2003.  On December 1, 2003, Judge Garza entered his findings of facts and conclusions of law.  On March 30, 2005, the Texas Court of Criminal Appeals denied the habeas application without written order based on the findings of the trial court.  Petitioner did not file a motion for re-hearing, nor did he file a petition for writ of certiorari with the U.S. Supreme Court.

On July 6, 2005,[2] Petitioner filed a timely federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in the United States District Court for the Southern District of

_____

[2]*See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir.  1998)(for purposes of determining the applicability of AEDPA, a federal petition is filed on the date it is placed in the prison mail system).  The earliest that Petitioner could have place his petition in the mail was the dated that he executed the petition.  *See Petition for Writ of Habeas Corpus*, Docket 3, p.  9.

Texas, Houston Division. *Rodriguez v. Cockrell*, Civil Action No. H-05-2356 (Docket No. 2). United States District Judge Melinda Harmon ordered the case to be transferred to the Brownsville Division pursuant to 28 U.S.C. § 2241(d), as Petitioner was convicted and sentenced in the 138th Judicial District Court, Cameron County, Texas (Docket No. 1). Petitioner asserts the following fourteen grounds of error summarized into five categories follows:

> (1) The trial court abused its discretion when it: (a) failed to provide Petitioner an interpreter during the entire jury trial; (b) improperly commented on the weight of the evidence; (c) allowed inadmissible, prejudicial, and inflammatory photographs and testimony; (d) failed to include in the jury charge regarding punishment Petitioner's timely filed application for community supervision; and (e) refused to allow Petitioner to present evidence of the victim's violent nature and cross examine witnesses regarding the victim's reputation;

> (2) The Brownsville state officials improperly denied Petitioner's request to consult with the Mexican Consulate;

> (3) The State committed acts of prosecutorial misconduct when it: (a) coerced a defense witness, Ester Solis Gomez, to testify falsely and withhold exculpatory evidence; (b) made an improper opening statement because it was unnecessarily specific regarding the anticipated evidence; (c) made an improper closing argument regarding voluntary intoxication; and (d) improperly argued and misinterpreted statutory law;

> (4) Petitioner was denied effective assistance of trial counsel when counsel: (a) failed to impeach the State's leading witness through prior inconsistent statements; (b) failed to object to the State's factually incorrect Exhibit #40; (c) failed to secure a potential material fact witness, Elvia Lozano, who was willing to testify; (d) failed to conduct an investigation by securing an expert to conduct a DNA test on the blood found in State's exhibits 38, 51, 52, and 53; and

> (5) Petitioner was denied effective assistance of appellate counsel when counsel failed to raise meritorious issues.

Petitioner also includes two additional points of error in his § 2254 petition in which he argues:

> (1) The Court of Appeal erroneously upheld the trial court's refusal to allow Petitioner to present evidence of the complainant's violent nature before the jury

4

      (2) The Court of Appeals erroneously upheld the trial court's refusal to allow Petitioner to cross examine witness about the complainant's reputation

Petitioner concedes that these last two additional points of error (i.e. grounds fifteen and sixteen) were not raised in his state habeas application, as were the other fourteen points of error, but were raised in his petition for discretionary review.[3]

      On January 17, 2006, the Respondent filed a Motion for Summary Judgment (Docket No. 20).  The Respondent concedes that Petitioner has sufficiently exhausted his state court remedies as required under 28 U.S.C. § 2254(b) and (c) with regard to the issues raised in the instant petition.  Petitioner filed a response (Docket No. 23).  Petitioner is in custody and currently incarcerated at the Eastham Unit in Lovelady, Texas.

## II.  Standard of Review

### A.  Contrary To or Unreasonable Application of Federal law

      The first issue to be addressed is the appropriate standard of review.  Because Petitioner filed his petition for habeas corpus relief on July 6, 2005, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this appeal. *See Lindh v. Murphy*, 521 U.S. 320, 324-26, 117 S.Ct. 2059, 2062-63, 138 L.Ed.2d 481 (1997)(confirming that the AEDPA applies to federal habeas corpus petitions filed on or after April 24, 1996).

      The AEDPA standard for granting habeas corpus relief with respect to an adjudication on the merits in state court is set forth at 28 U.S.C. § 2254(d) as follows:

      (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

---

[3]*Petition for Writ of Habeas Corpus*, Docket No.  3, p.  8C.

5

adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

In this circuit, provided the state court conducted a full and fair adjudication of the petitioner's claims, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2). *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997). Under the AEDPA standard of review, this Court cannot grant petitioner federal habeas corpus relief in any claim that was adjudicated "on the merits" in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000).

Under subsection (d)(1), a state court's decision is "contrary to" clearly established federal law if the state court "applies a rule that contradicts the governing law" announced in Supreme Court cases, or the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7 (2003). A state court's application of clearly established federal law is "unreasonable" within the

meaning of AEDPA when the state court identifies the correct governing legal principle from Supreme Court precedent, but applies that principle to the case in an objectively unreasonable manner. *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527 (2003). Habeas relief is "inappropriate when a state court, at a minimum, reaches a 'satisfactory conclusion.'" *Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004).

Under subsection (d)(2), a writ of habeas corpus may also issue if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under AEDPA, state-court factual findings are "presumed to be correct" unless the habeas petitioner rebuts the presumption through "clear and convincing evidence." *Id*. § 2254(e)(1); *see Miller v. Johnson*, 200 F.3d 274, 281 (2000).

Because we review only the reasonableness of a state court's ultimate decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without a written opinion. In conducting the above analysis, a federal habeas court may only review the state court's "decision" and not the written opinion explaining that decision. *See Amador v. Quarterman*, 458 F.3d 397 (5th Cir. 2006); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003). When state habeas relief is denied without written opinion, the federal habeas court assumes that state court applied proper "clearly established federal law," and looks only to whether its decision was contrary to or objectively unreasonable application of that law. *Miller v. Dretke*, 420 F.3d 356, (5th Cir. 2005). In this situation, we assume "that the state court applied the proper 'clearly established Federal law,' " and then determine "whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Schaetzle v. Cockrell*, 343

7

F.3d 440, 443 (5th Cir.2003).

In the context of federal habeas proceedings, adjudication "on the merits" is a term of art that refers to whether a court's disposition of the case was substantive as opposed to procedural. *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir.1997).   Under Texas law, "denial" of habeas petition, as opposed to a dismissal, suggests that state court's adjudication of claims asserted by habeas petitioner was on the merits.  *See Salazar v. Dretke*, 2005 WL 1797079 (5th Cir.  2005). Denial by the Texas Court of Criminal Appeals of a state habeas application without written order is an "adjudication on the merits" within meaning of federal habeas statute, where a procedural ground for denying the application does not appear in the state habeas record.. *See Thompson v. Johnson*, 7 F.Supp.2d 848 (S.D.Tex. 1998).

### C.  Petitioner's Points of Error are Reviewable

In this case, Petitioner raised the fourteen points of error which raise questions of law, or mixed questions of law and fact, subject to the standard set forth in subsection (d)(1). Petitioner's state habeas was "denied" without written opinion.  Thus, that court's disposition of this issue was an adjudication "on the merits."  Therefore, Petitioner's claims are reviewable and in order to be entitled to relief, Petitioner must demonstrate that the state court's decision was contrary to or an unreasonable application of clearly established federal law under subsection (d)(1).  The burden of proof is on the petitioner in a habeas corpus proceeding. *Webster v. Estelle*, 505 F.2d 926 (5th Cir.  1974).

### D.  Harmless Error Analysis

On federal habeas review of state court convictions, a federal harmless error standard applies.  *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710 (1993).  Therefore, even if the

state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, the analysis is not complete. Unless the error is a structural defect in the trial that defies harmless-error analysis, the habeas court must apply the harmless-error standard of *Brecht* and *O'Neal v. McAninch*, 513 U.S. 432, 115 S.Ct. 992 (1995). Under *Brecht*, habeas relief is proper only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623, 113 S.Ct. 1710 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239 (1946)). Under *O'Neal*, a "substantial and injurious effect" exists when the court finds itself in "grave doubt" about the effect of the error on the jury's verdict. *O'Neal*, 513 U.S. at 435, 115 S.Ct. 992. "Grave doubt" exists where the issue of harmlessness is "so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error." *Id*.

### III.  Legal Analysis

### A.  Actions of the Trial Court

### 1.  Failure to Provide an Interpreter During Voir Dire

Petitioner argues that the trial court failed to provide an interpreter during the "entire" trial in violation of his Sixth and Fourteenth Amendment rights.[4]  The record indicates that an interpreter was not provided during voir dire, but was provided on the first day of trial and thereafter.  The record shows that on October 4, 1999, at the outset of the voir dire proceedings, Petitioner's trial counsel informed the trial court regarding Petitioner's need for an interpreter and the court noted that a interpreter would be provided.  R.R. Vol. 2, p. 4.  The trial court then proceeded to make a brief presentation to the jury.  Petitioner's counsel once again requested an

---

[4]*Petitioner's Memorandum of Law*, Docket No.  4, p.  4.

interpreter and the court responded that an interpreter would be provided.

> MR. CANTU:        Your Honor?  I had asked for an interpreter.  If we could have an
>                   interpreter for my client?
>
> THE COURT:        For purposes of voir dire?
>
> MR. CANTU:        Yes, Your Honor.
>
> THE COURT:        Huh.  Get me an interpreter.
>
> R.R. Vol.  2, p.  16.

The record shows that voir dire was commenced.  At the end of the voir dire and after the jury

was excused the trial court noted that an interpreter would be in attendance the following

morning on the first day of trial.

> THE COURT:        We will get an interpreter for him in the morning.
>
> MR.  CANTU:       Thank you, Your Honor.
>
> R.R. Vol.  2, p. 79.

Although, the Respondent argues that the trial transcript "index" indicates that an interpreter was

provided, it is not clear at what point the interpreter was actually made available.  *See* R.R. Vol.

3,  Index.

Assuming an interpreter was not provided, the issue is whether the trial court's failure to

provide an  interpreter during voir dire violates Petitioner's Sixth and Fourteenth Amendment

rights.  The Sixth Amendment secures the right of an accused in all criminal prosecutions to trial

by an impartial jury.  *Turner v.  Murray*, 476 U.S. 28, 36 n.9, 106 S.Ct. 1683, 1688 n.9 (1986).

The Sixth Amendment ensures the right to be meaningfully present at one's own trial, to assist in

one's own defense, to have effective assistance of counsel, to confront the government's

witnesses.  *See* U.S. CONST. amend. XI.  The due process clause of the Fourteenth Amendment

10

prohibits trying a criminal defendant who lacks capacity to understand the proceedings or to assist in the preparation of his defense.   *See Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896 (1975); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836 (1966). This prohibition refers not only to mental incompetents, but also to those who are hampered by their inability to communicate in the English language.  *United States v. Martinez*, 616 F.2d 185, 188 (5th Cir.1980), cert. denied, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981)(the use of courtroom interpreters involves a balancing of the defendant's constitutional rights to confrontation and due process against the public's interest in the economical administration of criminal law).

An accused has the right to be present at his own trial, including the impaneling of the jury, for two basic reasons. First, the right is constitutionally protected. The Confrontation Clause of the Sixth Amendment to the United States Constitution requires the defendant's presence when testimony is presented against him. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057 (1970). Also, as the Supreme Court has stated, the right to be present is "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484 (1985) (per curiam). An accused "has a [constitutional] right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15 (1975).

In *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), *overruled on other grounds*, the Court explained that a defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge... [T]he presence of a defendant is a condition of due

11

process to the extent that a fair and just hearing would be thwarted by his absence, and to that

extent only." *Id.*, at 105-106, 108, 54 S.Ct., at 332, 333.  The Court cautioned in *Snyder* that the

exclusion of a defendant from a trial proceeding should be considered in light of the whole

record. 291 U.S., at 115, 54 S.Ct., at 335.  Thus, a defendant is guaranteed the right to be present

at any stage of the criminal proceeding that is "critical to its outcome" if his presence would

contribute to the fairness of the procedure. *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658

(1987)(emphasis added).

      Voir dire "plays a critical function in assuring the criminal defendant that his Sixth

Amendment right to an impartial jury will be honored." *Rosales-Lopez v. United States*, 451 U.S.

182, 188, 101 S.Ct. 1629, 1634 (1981).  Voir dire interrogation can detect veniremen who will

not be able to follow the court's instructions and evaluate the evidence, and it facilitates the

exercise of peremptory strikes. *Id.*  Lack of adequate voir dire impairs the defendant's right to

exercise peremptory challenges.  *See Swain v.  Alabama*, 380 U.S. 202, 85 S.Ct.  824 (1965).

In *United States v. Alikpo*, 944 F.2d 206 (1991), the Fifth Circuit held that a defendant's physical

absence  from the majority of the jury selection process, without express waiver, constituted

constitutional error.   During voir dire, what may be irrelevant when heard or seen by

[defendant's] lawyer may tap the defendant's a memory or association, which in turn may be of

some use to his defense.   *United States v. Gordon*, 829 F.2d 119, 124 (D.C. Cir.1987)

(defendant's complete absence from voir dire was violation of due process).

      Although the right to be present during voir dire has been clearly established, exclusion

for brief or intermittent periods does not violate due process.  In *Gagnon*, 470 U.S. 522 (1985),

the Supreme Court expressly held that due process does not require a defendant to be present for

every brief discussion involving the court, a juror, and counsel.  At issue in that case was the trial court's brief "in camera" questioning of an "individual sitting juror" who had expressed concern about the fact that defendant appeared to be sketching members of the jury. The Supreme Court ruled that the conference was not the sort of event which every defendant had a due process right personally to attend.

A defendant's absence during the impaneling of the jury certainly frustrates the fairness of the trial. *See Gordon*, 829 F.2d at 123-24.  The absent defendant is denied the opportunity to give advice or suggestions to his lawyer concerning potential jurors. *See Snyder*, 291 U.S. at 106. A defendant's presence is also necessary so that he may effectively exercise his peremptory challenges, *United States v. Washington*, 705 F.2d 489, 497 (D.C.Cir.1983), a process that is essential to an impartial trial. *Lewis v. United States*, 146 U.S. 370, 378, 13 S.Ct. 136, 139 (1892).  "[C]onvening a criminal tribunal without the presence of the defendant treads precariously close to the concept of trial in absentia which our system has long disdained." *Alikpo*, 944 F.2d at 209.

In determining whether Petitioner's inability to understand the voir dire proceedings violated his constitutional rights, we consider the proceedings "in light of the whole record." *Gagnon*, 470 U.S. at 526-27, 105 S.Ct. 1482.   In this case, voir dire took place over the course of half a day.  Petitioner was unable to understand any of the questions, responses, and admonitions throughout the "entire" jury selection process, as opposed to a brief bench or side bar conference.  Although Petitioner was able to observe the demeanor of potential jurors, he was unable to understand the questions posed and the responses given.  "[A] defendant is sorely handicapped and can be of little assistance to counsel when he has not had the opportunity to

hear the venire's responses to questions and observe their reactions to him and to the proceedings." *United States v. Alikpo*, 944 F.2d 206, 210 (5th Cir. 1991).  This lack of understanding may have adversely affected Petitioner's ability participate meaningfully in jury selection.  Petitioner's presence could have had a substantial effect on the outcome, rendering his presence more than just a mere "shadow." *See Snyder*, 291 U.S. at 106-07, 54 S.Ct. 330; *Gagnon*, 470 U.S. at 527, 105 S.Ct. 1482.

Turning to standard of review set forth in §2254(d)(1), we note that Petitioner raised this claim in his state habeas application and it was denied without written opinion.  The assumption, therefore, is that the state habeas court identified the correct governing legal principle from Supreme Court precedent, but applied that principle to the case in an objectively unreasonable manner.[5]  In light of  the case law examined above, the state court decision was an unreasonable application of clearly established Federal law.  However, the analysis is not complete.

In applying § 2254(d)(1), we first determine whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment.  If so, we then consider whether the state court decision was "contrary to" or an "unreasonable application of" that clearly established federal law.   That we have done. If the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, the harmless error analysis set forth in *Brecht*, 507 U.S. 619 (1993) and *O'Neal*, 513 U.S. 432 (1995) must be applied.  **The right to be present at voir dire is not a structural right whose violation constitutes per se error, rather, there must be prejudice to warrant**

---

[5]When state habeas relief is denied without written opinion, federal habeas court assumes that state court applied proper "clearly established federal law," and looks only to whether its decision was contrary to or objectively unreasonable application of that law.  *Miller v. Dretke*, 420 F.3d 356 (5th Cir.  2005).

reversal.  *See United States v.  Riddle*, 249 F.3d 529, 535 (6th Cir. 2001).  Any error in a defendant's voir dire absence is not a "defect affecting the framework within which the trial proceeds," *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246 (1991).   It is the responsibility of the court, once it concludes there was error, to determine whether the error affected the judgment.  *O'Neal*, 513 at 437.  It must do so without benefit of such aids as presumptions or allocated burdens of proof that expedite fact-finding at the trial. *Id*.

In this case, the error appears to be harmless.  Petitioner does not argue that his presence and active participation in voir dire may have resulted in a different jury and hence a different verdict.  Nor does he argue that any particular panel members exhibited a bias or prejudice, or that the jury chosen was improper.  Petitioner was well represented by two experienced trial counsel during the entire voir dire who both spoke the Spanish language.  One counsel actively participated in the questioning of the jury, while the other, remained with Petitioner.  Petitioner was physically present in the courtroom during the entire voir dire.  Although he was unable to understand the questions and the responses, he was able to observe the demeanor of the potential jurors and consult with his trial counsel and confer with him regarding any strikes. Both defense counsel, fluent in the Spanish language, could have easily shared notes with Petitioner and consult with him during and immediately after voir dire.  Consequently, he was able to compensate effectively for the lack of an interpreter.

Our inquiry here is whether, in light of the record as a whole, the lack of an interpreter during voir dire, "had substantial and injurious effect or influence in determining the jury's verdict."  During the entire voir dire process, Petitioner was in the courtroom, assisted by counsel, with whom he was able to confer and consult.   Although the possibility exists that a

defendant may aid in the voir dire process by observing jurors and alerting their trial counsel to possible biases, nothing in the record or Petitioner's habeas application indicates that he was prevented from doing so, or that he would have done so.  There is no basis on which to find that had Petitioner been provided an interpreter, the composition of the jury would have been different and would have reached a another verdict based on the same evidence.  The possible composition of the jury and its relation to a particular verdict, given the same evidence, is highly speculative.  Even if Petitioner was provided an interpreter, consulted his attorney on possible juror prejudice, and suggested strikes for cause, there is no indication that the chosen jury would have reached a not-guilty verdict, given the weight of trial evidence.  Given the amount of evidence presented in the case and the defenses relied on by the Petitioner, this particular kind of trial error does create a grave doubt about its effect on the jury or its verdict.  The possible failure of the court to provide an interpreter at voir dire did was harmless error.

### 2. The Crime Scene Diagram

Petitioner argues that the trial court erred by prohibiting defense counsel from correcting a crime scene diagram introduced by the State.  Petitioner argues that the diagram was not produced "to scale", was factually incorrect, and therefore violated his Sixth and Fourteenth Amendment rights.  Petitioner simply argues the trial court's action of prohibiting defense counsel from marking on the exhibit violated his constitutional right to a fair and impartial jury.

First, the record reveals that Petitioner failed to object to the diagram.  Second, defense counsel was given ample opportunity to express to the jury that the diagram was not to scale, during the direct examination of the Detective Hernandez.  Third, the trial court afforded defense counsel an opportunity to present a "to scale" or "factually correct" diagram.  The record shows

16

that defense counsel never offered an "accurate" diagram.

| | |
|---|---|
| MR. HENLEY: | I am handing you what I've marked as State's Exhibit No. 40.  Is this an enlargement of the diagram that you made? |
| HERNANDEZ: | Yes, sir. |
| MR.CANTU: | No objection, Your Honor. |
| THE COURT: | All right.  It's admitted. |

R.R. Vol.  3, p.  215.


| | |
|---|---|
| MR. CANTU: | Well, Detective, actually, then, if this isn't to scale and you have these stains here, isn't this diagram factually wrong? |
| HERNANDEZ: | That's why you put the disclaimer of putting "not to scale". |
| MR CANTU: | Well, my question is: Isn't it factually wrong?  This jury has been sitting here looking at this thinking the blood stains were there on that diagram, when in fact, using your measurements, of this were to scale – in other words, if it were accurate, they would be more here almost in the middle of the street? |
| HERNANDEZ: | Maybe right here, sir (indicating).  Where the numbers are. |
| MR. CANTU: | And it's your estimate, and I understand that.  We don't have a calculation of – would you please mark above where they should be? |
| THE COURT: | Hold on a second.  Has that exhibit already been admitted? |
| MR. HENLEY: | Yes, Your Honor. Please do not mark on an existing exhibit. |
| THE COURT: | All right. |
| MR. CANTU: | Well, Your Honor, how can I explain the incorrectness of this exhibit? |
| MR. HENLEY: | If he's insisting that its incorrect, I'd ask him to reproduce a copy of that and make alteration on a new exhibit. |

17

THE COURT:          The marks on the exhibits has already been admitted, Mr. Cantu, you can draw another one, if you wish.  That's all I can tell you. The exhibit has already been introduced.

R.R. Vol.  4, p.  79-80.

Petitioner argues that the trial court's refusal to allow defense counsel to mark on the diagram amounted to an improper comment on the weight of the evidence and constituted  fundamental error.  However, it is clear from the record that the trial court's statement was not a comment on the weight of the evidence.  Not only has Petitioner misconstrued the trial court's actions, but more importantly, Petitioner has completely failed to set forth a cognizable federal constitutional violation.

Federally issued writs of habeas corpus reach only convictions obtained in violation of some provision of the United States Constitution.  *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948 (1982).  Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension. *Id*.  Petitioner claims that the trial court's comment violated his Sixth and Fourteenth Amendment rights.  The Sixth Amendment secures the right of an accused in all criminal prosecutions to trial by an impartial jury, and the Fourteenth Amendment protects due process rights.

Federal habeas corpus relief does not lie for errors of state law.  *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102 (1990).   It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. *Estelle v.  McGuire*, 502 U.S. 62, 67-68, 112 S.Ct.  475, 480 (1991).  A state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness. *See Evans v. Thigpen*, 809 F.2d 239, 242 (5th Cir.1987). Thus, only when the wrongfully admitted evidence

18

has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted. *See Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir.1986).

In this case, there was no evidentiary ruling made by the trial court.  The diagram was admitted with no objection by defense counsel.  Defense counsel pointed out to the jury that the diagram was not to scale.  The trial court indicated that defense counsel would be allowed to submit into evidence another diagram with corrected markings.  It is clear that the action of the trial court was not evidentiary ruling, nor was it an improper comment on the weight of the evidence, nor did it amount to a denial of fundamental fairness resulting in a constitutional violation.

In addition, under the standard of review set forth in § 2254(d)(1), Petitioner has failed to show that the state habeas court's denial of this claim was "contrary to or an unreasonable application of federal law."  Petitioner has not identified the applicable clearly established Supreme Court precedent, nor has he shown how it was unreasonably applied to his claim of error.  The Court, engaging in its own research, fails to see how the trial court's statement, which directed defense to refrain from marking on an admitted exhibit, amounts to a due process violation.

Petitioner was denied state habeas relief without written opinion.  Therefore, this Court assumes that the state court applied the proper "clearly established federal law" and looks only to whether the decision was contrary to, or an unreasonable application of that law.  *See Miller v. Dretke*, 420 F.3d 356 (5th Cir.  2005).  Petitioner's argument does not set forth a constitutional violation under the Sixth or Fourteenth Amendments.   The state habeas court's denial of this claim was proper and not contrary to, or an unreasonable application of federal law.

### 3.  Victim Photographs

Petitioner argues that trial court improperly admitted into evidence photographs of the victim's injuries, thereby violating his right to a fair trial under the Sixth and Fourteenth Amendments.  Petitioner claims that the photographs were intended to excite the jury and arouse emotions and their probative value did not outweigh the resulting prejudice. The State introduced a photograph depicting bullets and bullet fragments (Exhibit 70), which was not objected to by defense counsel.  The State also introduced photographs of gunshot entry wounds of the chest (Exhibit 71) and a left thigh wound (Exhibit 72), to which defense counsel objected.  The State's expert, Dr. Dahm testified about the trajectory of the bullets, the damage to heart and the leg. The trial court overruled defense counsel's objection and allowed the photographs to be admitted.

Generally, evidentiary issues do not present federal questions or implicate the Federal Constitution.  Federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991).  The admissibility of photographs of homicide victims is a matter of Texas law.  Photographs depicting the deceased before the performance of an autopsy are admissible.  *See Clark v.  State*, 627 S.W.2d 693, 705 (Tex.Crim.App. 1982).

A federal habeas court may consider the propriety of state court evidentiary rulings only if there has been a constitutional infraction that renders the entire trial fundamentally unfair. *Trussell v. Estelle*, 699 F.2d 256, 259 (5th Cir.1983).  "[W]hen a state court admits evidence that is 'so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.' " *Dawson v. Delaware*, 503 U.S. 159, 179, 112 S.Ct. 1093 (1992) (quoting *Tennessee v. Bane*, 510 U.S. 808, 114 S.Ct. 52 (1993)).

In conducting this analysis, it is irrelevant whether the evidence was correctly admitted pursuant to state law. *Estelle v. McGuire*, 502 U.S. 62 (1991). Rather, the sole inquiry is whether the admission violated the Constitution. *Id*. at 68, 112 S.Ct. 475.

The record indicates that the photographs were relevant and probative of contested issues of cause, manner and circumstances of the victim's death. The trial court weighed the probative value of the photographs versus their prejudicial nature. Although gruesome, the trial court concluded that the photographic evidence was probative and its value outweighed the danger of unfair prejudice. In order to succeed in a federal habeas action, Petitioner must show a constitutional violation, i.e. that the trial court admitted evidence that was "so unduly prejudicial that it rendered the trial fundamentally unfair." Only when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted. *See Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir.1986). Petitioner has not made this showing.

Additionally, under § 2254(d)(1), Petitioner must show that the state habeas court's denial of this claim was contrary to or an unreasonable application of federal law. Petitioner was denied state habeas relief without written opinion. Therefore, this Court assumes that the state court applied the proper "clearly established federal law" and looks only to whether the decision was contrary to, or an unreasonable application of that law. *See Miller v. Dretke*, 420 F.3d 356 (5th Cir. 2005). Petitioner fails to allege facts which constitute a violation of his Sixth or Fourteenth Amendments and has not shown that the state court's decision was contrary to or an unreasonable application of federal law. The state habeas court's denial of this claim was proper.

21

### 4. Omission of the Community Supervision Instruction

Petitioner argues that the trial court committed error when it failed to include in the jury

charge an instruction regarding Petitioner's eligibility for community supervision.  Under Article

42.12 § 4(e) of the Texas Code of Criminal Procedure, Petitioner was required to: (1) file a

written sworn motion stating that he had not been previously convicted of a felony; and (2)

provide adequate proof supporting that motion.

> A defendant is eligible for community supervision under this section only if before the
> trial begins the defendant files a written sworn motion with the judge that the defendant
> has not previously been convicted of a felony in this or any other state, and the jury
> enters in the verdict a finding that the information in the defendant's motion is true.

> Article 42.12(e), Sec. 4, V.A.C.C.P. (2005).

Under Article 42.12 § 4(d), a defendant is not eligible for community supervision if the

defendant "is sentenced to a term of imprisonment that exceeds 10 years" or "does not file a

sworn motion under Subsection (e) of this section or for whom the jury does not enter in the

verdict a finding that the information contained in the motion is true."  Article 42.12(d), Sec. 4,

V.A.C.C.P. (2005).  The granting of community supervision is a privilege, not a right. *See Flores*

*v. State*, 904 S.W.2d 129, 130 (Tex.Crim.App.1995)(plurality opinion)("there is no fundamental

right to receive probation; it is within the discretion of the trial court to determine whether an

individual defendant is entitled to probation").  To even be eligible for jury recommended

probation, a defendant bears the burden of pleading and proving that he has no prior felony

convictions.  *Speth v. State*, 6 S.W.3d 530, 533 (Tex.Crim.App.1999).

In this case, the state offered into evidence Exhibit No.  82, which consisted of a felony

conviction for murder in Mexico.  Defense counsel made an objection to the introduction of the

foreign judgment.  The Court reminded defense counsel that it was Petitioner's burden to prove

that he did not have any prior felony convictions in order to be eligible for community

supervision.

> THE STATE:  One other thing I'd like to challenge just for the record.  The defendant has     filed, apparently, a verified motion for probation stating he hadn't been convicted in a felony in this state, or any other state, in the last ten years. And the State's offer of proof number 82 says specifically, otherwise.
>
> THE COURT: Your dealing with a foreign case?
>
> THE STATE:  Yes, Your Honor.  It's a foreign judgment, Judge.
>
> THE COURT: As far as in this state or any other state, that's the interpretation.  I don't know there is any case law on that point.
>
> THE STATE: I haven't found any case law, Judge, but I will note for the Court that the law says in this State, and if the "S" is capitalized, or any other state, and the "s" is small,.  My interpretation is, that means any other state that can convey criminal felony convictions, and that includes the country of Mexico.
>
> THE COURT: It would be up to him, Mr.  Blaylock.  It is going to be up to the defendant,     of course, to prove that.  And, of course, it may be – maybe you will be     able to get into this judgment.  I don't know.
>
> R.R.  Vol.  6, p.  11-12.

The Respondent argues that Petitioner filed the sworn motion, but failed to provide adequate

proof as required and therefore, the omission of the instruction was proper.  The jury did not

make, in the verdict, a finding that the information in the defendant's motion was true.  *See* R.R.

Vol. 6, p. 120.  Petitioner does not allege that he submitted the required proof during the trial.  In

any event, Petitioner was assessed life imprisonment, making him ineligible for community

supervision under Article 42.12 § 4(d).

Petitioner has failed, under the standard of review set forth in § 2254(d)(1), to show that

the state habeas court's denial of this claim was contrary to or an unreasonable application of

23

federal law.  Petitioner was denied state habeas relief without written opinion.  Therefore, this Court assumes that the state court applied the proper "clearly established federal law" and looks only to whether the decision was contrary to, or an unreasonable application of that law.  *See Miller v. Dretke*, 420 F.3d 356 (5th Cir.  2005).  Petitioner, in this case,  has not demonstrated that the omission of the community supervision instruction was a violation of his Fourteenth Amendment due process rights.  An incorrect or omitted jury instruction is violative of due process unless the Petitioner establishes that it resulted in a fundamental defect  which results in a complete miscarriage of justice.  Petitioner has not identified the applicable federal law, nor has he shown that the state court's decision was contrary to or an unreasonable application of that law.  The state habeas court's denial of this claim was proper.

Even if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, the omission of a jury instruction is a trial error which is subject to the harmless error analysis.  Petitioner has not shown that the error had a substantial and injurious effect in determining the jury's verdict.

## B.  Prosecutorial Misconduct

### 1.  Perjured Witness Testimony and Exculpatory Evidence

Petitioner alleges that the State committed acts of prosecutorial misconduct when it coerced defense witness, Ester Soliz Gomez ("Gomez") to testify falsely and withhold exculpatory evidence.  Specifically, Petitioner argues that the prosecution met with Gomez outside the courtroom, prior to her testimony, and prompted her to give false testimony.  According to Petitioner, Gomez was an eyewitness to the altercation between Petitioner and the victim and subsequently relayed the events she witnessed to a third party, Elvia Lozano

("Lozano").  Lozano executed an affidavit in which she stated that Gomez had told her that she (Gomez) had witnessed the victim attack Petitioner with a tire tool.  However, when Gomez took the stand, she testified that she did not recall witnessing the altercation and thus failed to support Petitioner's self defense theory.

Petitioner raised this claim in his state habeas petition.  The habeas court remanded for further fact finding.  The trial court conducted a hearing and testimony was provided by Petitioner and Petitioner's trial counsel.  The trial court found that Petitioner had advised his attorney not to call Lozano as a witness (to re-but Gomez's testimony) because she (Lozano) was an ex-girlfriend and that she would not be a favorable witness.  The trial court found that perjury did not occur.  Based on these findings, the habeas court denied relief without written order.

To obtain reversal of a conviction based on the state's use of perjured testimony, the habeas petitioner must show: (1) that the witness's testimony was actually false; (2) the testimony was material; (3) that the prosecution has knowledge that the testimony was false. *United States v. Scott*, 48 F.3d 1389, 1394 (5th Cir. 1995), cert. denied, 516 U.S. 902, 116 S.Ct. 264 (1995). The false testimony is material if there is "any reasonable likelihood" that it could have "affected the judgment of the jury." *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 766 (1972).   Simply because testimony at trial is different does not equate to perjury.  *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).  Contradictory testimony from witnesses or inconsistences in a witness testimony at trial are to be resolved by the trier of fact and do not suffice to establish that certain testimony was perjured.  *Id*.

Factual determinations made by the trial court are entitled to a presumption of correctness which must be rebutted by clear and convincing evidence.  28 U.S.C. 2254(e).

Implicit findings of the court are given the same weight as explicit findings. *Marshall v. Lonberger*, 459 US. 422, 433-41 (1983). In this case, the trial court made an implicit credibility determination at the evidentiary hearing finding that Petitioner's testimony and Lozano's affidavit were not sufficient to establish that Gomez had committed perjury. Petitioner has failed to present any information to rebut that finding.

The state habeas court's denial of this claim was proper. Petitioner has failed, under the standard of review set forth in § 2254(d)(1), to show that the state habeas court's denial of this claim was contrary to or an unreasonable application of federal law. Petitioner's mere reliance on Gomez's change in story, as evidence of perjury, is not sufficient. Petitioner has failed to show that Gomez's testimony was false, that the government knew it was false and that the testimony was material. Petitioner has failed to show that any prosecutorial misconduct resulted in the denial of Petitioner's right to a fair trial.

## 2. Improper Remarks by Prosecutor - Opening and Closing Statements

Petitioner alleges that the prosecutor made improper remarks during his opening statement because he was unnecessarily specific and mischaracterized the evidence and facts not yet presented at trial. Specifically, Petitioner takes issue with four statements made by the prosecutor.

(1) Defendant and Olga Castillo came to a screeching halt near where Mr. Russell lives.... (R.R. Vol. 3, p. 21)

(2) Russell is curious about what's happening in the street. (R.R. Vol. 3, p. 21)

(3) A neighbor had seen his car parked because the dog began barking and a man fitting his description walked quickly through the alley. (R.R. Vol. 3, p. 23).

(4) Richard Russell ended up dead at the end of his driveway. (R.R. Vol 3, p. 25).

26

*See Memorandum*, Docket No. 4, p. 30.

Petitioner argues that with regard to the first statement, there was no evidence; as to the second statement, the evidence shows that Russell was mad, not curious; as to the third statement, there was no evidence; and as to the fourth statement, Russell died in the street, not at the end of his driveway.

Where improper prosecutorial argument is asserted as a basis for habeas relief, " 'it is not enough that the prosecutors' remarks were undesirable or even universally condemned,' " rather "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471 (1987).  In order to constitute a denial of due process "'the acts complained of must be of such quality as necessarily prevent a fair trial,' " *Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992).  The burden is on the habeas petitioner to also show a reasonable probability "that but for these remarks" the result would have been different. *See Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir.1986).  "[F]ailure to object to an argument ...., is an indication that it was not perceived as having a substantial adverse effect, *Derden* at 1458, or would not naturally and necessarily be understood as advancing improper considerations. *Nichols v. Scott*, 69 F.3d 1255, 1278 (5th Cir. 1995)

Review of an assertion of prosecutorial misconduct involves a two step analysis.  First, the court must decide whether or not the prosecutor made an improper remark.  *United States v. Munoz*, 150 F.3d 401, 414 (5th Cir.1998).  In assessing whether statements made by a prosecutor were improper, it is necessary to look at them in context. *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir.1995).  A prosecutor's closing argument cannot roam beyond the evidence

27

presented during trial.  *See U.S. v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999)

Second, if an improper remark was made, the court must evaluate whether the remark affected the substantial rights of the defendant. *Munoz* at 415.  In resolving this matter, we assess "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *United States v. Tomblin*, 46 F.3d 1369, 1389 (5th Cir.1995). "The magnitude of the prejudicial effect is tested by looking at the prosecutor's remarks in the context of the trial in which they were made and attempting to elucidate their intended effect." *United States v. Fields*, 72 F.3d 1200, 1207 (5th Cir. 1996).

In this case, Petitioner concludes, without any supporting argument, that the prosecutor's comments prejudiced his defense.  Reviewing the statements in context, they are not improper. Even assuming the remarks were improper, Petitioner has failed to demonstrate that the remarks affected his substantial rights.  Petitioner's sole defense was that of self-defense.  Only one of the remarks at issue (Russell's alleged curiosity versus anger) even seemingly relates to Petitioner's self defense theory.  Petitioner's identity was not at issue.  There was no evidence at trial that Russell possessed a weapon.  Two witnesses testified that Russell was calm before the incident. Petitioner's counsel failed to object to these remarks at trial.  There is no indication in the record before this Court, whether the trial court mitigated any prejudicial effect by instructing the jury to base their decision solely upon the testimony and evidence presented.  In any event, the evidence against Petitioner was substantial.  Given the numerous witnesses, pieces of evidence, and issues placed before the jury, the Court cannot conclude that the prosecutor's statements cast a shadow over the trial and unduly prejudiced Petitioner's case.

Petitioner also alleges that the prosecutor's closing statement improperly touched upon

28

voluntary intoxication.  Self defense was the only defense upon which evidence was introduced

at trial and the prosecutor alluded to the intoxication defense during closing arguments.

> He had a little bit to drink.  That's not a defense.  You can't get drunk, kill people and
> then get off.  That's very important.  Because today, you people are from Cameron
> County, all 13 of you – all 13 of you on this issue of murder.

> *Memorandum*, Docket No. 4, p. 33.

Again, assuming that the prosecutor's reference to an intoxication defense was improper,

Petitioner has failed to show that it affected his substantial rights.  Although the prosecutor

attacked a line of defense that Petitioner had not set forth, it did nothing to damage the evidence

with respect to the theory of self defense.  Given the numerous witnesses and pieces of evidence,

the Court cannot concluded that the prosecutor's statement overshadowed all that had preceded

the closing argument and unduly prejudiced Petitioner's case.  Petitioner has failed to

demonstrate a denial of his constitutional right of due process.  The state habeas court's denial of

this claim was proper.  Petitioner has failed, under the standard of review set forth in §

2254(d)(1), to show that the state habeas court's denial of this claim was contrary to or an

unreasonable application of federal law.   Petitioner's mere conclusion that he was prejudice is

wholly insufficient to show a constitutional violation.

### 3.  Misinterpretation of Statutory Law

Petitioner argues that the prosecutor improperly misinterpreted statutory law.

Specifically, Petitioner takes issue with the prosecutor's interpretation of the statute regarding

community supervision, Article 42.12, sec. 4(e) of the Texas Code of Criminal Procedure.

A defendant is eligible for community supervision under this section only if before the

trial begins the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony in this or any other state..."

TEX.CODE CRIM.PROC. 42.12, sec. 4(e).

The prosecutor urged that the word "state" (because it was not capitalized) included judgments of conviction from foreign jurisdictions, although he admitted that he had no case law authority for his proposition. The Court noted that it was up to the defense to prove the issue. However, the defense failed to provide evidence supporting the sworn motion and failed to present case law authority to the contrary.

In this case, Petitioner has failed, under his burden of proof, to show how the prosecutor's remark was either improper or substantially effected his right to trial. In any event, the record shows that Petitioner failed to provide evidence supporting his sworn motion and accordingly the jury was not instructed on community supervision. The state habeas court's denial of this claim was proper. Petitioner has failed, under the standard of review set forth in § 2254(d)(1), to show that the state habeas court's denial of this claim was contrary to or an unreasonable application of federal law.

### C.  Ineffective Assistance of Trial Counsel

Given the deferential standard of review under § 2254(d), the question before this Court is whether the Texas Court of Criminal Appeals decision to reject Petitioner's claims of ineffective assistance involved an "unreasonable" application, not merely an "incorrect" application of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner alleges that he received ineffective assistance of trial counsel when his counsel failed to: (1) impeach the State's leading witness; (2) object to the State's factually incorrect Exhibit 40; (3)

secure witness Elvia Lozano; (4) conduct an investigation and secure an expert to perform DNA analysis on the State's Exhibits 38, 51, 52, and 53.

Under *Strickland*, Petitioner must demonstrate both that counsel's performance was deficient and that the deficiency prejudiced the defense such that the result of the trial would have been different. *Id*. at 687, 104 S.Ct. at 2064. Both prongs must be shown by a preponderance of the evidence. *Rector v. Johnson*, 120 F.3d 551 (5th Cir.1997). To establish the first prong of deficient performance, Petitioner must show that her trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. However, this Court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id*. at 689, 104 S.Ct. at 2065. Therefore, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. A reviewing court must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

For the second prong, Petitioner must show a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. The possibility of a different outcome is not sufficient to prevail on the prejudice prong. *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir.), cert. denied, 522 U.S. 944, 118 S.Ct. 361, 139 L.Ed.2d 281 (1997). Rather, the defendant must demonstrate that the prejudice rendered sentencing "fundamentally unfair or unreliable." *Id*. (quoting *Lockhart v.*

31

*Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993)).  Counsel's

performance is considered effective so long as it is based upon adequate investigation.  *Crane v.*

*Johnson*, 178 F.3d 309, 312 (5th Cir. 1999)

### Failing to Impeach Witness

Petitioner alleges that his trial counsel was ineffective for failing to impeach the State's

leading witness, Barron, through prior inconsistent statements.  However, the record shows that

trial counsel repeatedly impeached Barron's assertion that the victim had been calm, with

Barron's statements to police that the victim had been mad.  Petitioner has failed to demonstrate

that trial counsel was deficient or that the deficiency prejudiced the defense.  Petitioner has also

failed to demonstrate that the habeas court's denial of this claim was contrary to or an

unreasonable application of federal law.

### Failing to Object to State's Exhibit 40

Petitioner alleges that his trial counsel was ineffective for failing to object to the State's

crime scene diagram as it was not to scale.  However, the record reveals that Officer Hernandez

testified that it was enlargement and that the diagram was not to scale and it was accordingly

labeled as such.  Officer Hernandez testified that the diagram depicted a general idea of the

crime scene, but that the jury could not rely on it determining exactly how the offense occurred.

Several witnesses testified as to the location of the victim when he was shot.  Trial counsel is not

required to raise meritless objections.  *See United States v. Gibson*, 55 F.3d173, 179 (5th Cir.

1999).  Petitioner has failed to demonstrate that trial counsel was deficient or that the deficiency

prejudiced the defense.  Petitioner has also failed to demonstrate that the habeas court's denial of

this claim was contrary to or an unreasonable application of federal law.

**Failing to Secure Witness Elvia Lozano**

Petitioner alleges that his trial counsel was ineffective for failing to secure Elvia Lozano to testify.  Petitioner believes that Lozano would have impeached the testimony of Ester Gomez, who testified that she did not observe the altercation between Petitioner and the victim.

Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir.1984). Where the only evidence of a missing witness' testimony is from the defendant, this Court views claims of ineffective assistance with great caution. *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir.1985).

The state habeas court remanded for further fact finding.  The trial court conducted an evidentiary hearing and produced findings of fact and conclusions of law.  Petitioner's counsel testified that the Petitioner instructed him not to call Lozano because she was a girlfriend and did not want her to appear in court.  On the other hand, Petitioner testified that he had instructed his counsel to call Lozano to testify.  *See Ex parte Rodriguez*, No. 52, 811-02, Supplement at 2-5. The affidavit of Lozano does not state that she was available and willing to testify in Petitioner's defense.  In any event, her potential testimony, as alleged by Petitioner, would have only gone to the offset the strength of Gomez's testimony that she did not see the altercation.  At best, Lozano's testimony would have served only to impeach Gomez's testimony that she saw nothing.  It would not have been admitted for the truth of the matter asserted.  The speculative testimony of but one witness, used to impeach another witness, who was neither favorable nor disfavorable to the defendant, would not have resulted in the level or prejudice needed under *Strickland*.  In addition, the conflicting testimony between Petitioner and his counsel about

33

whether or not to call Lozano to testify, was likely ultimately decided as part the presumptive reasoned trial strategy.  Petitioner has failed to demonstrate that trial counsel was deficient and that this deficiency prejudiced the defendant.  Petitioner has also failed to demonstrate that the habeas court's denial of this claim was contrary to or an unreasonable application of federal law.

### DNA Testing

Petitioner alleges that his trail counsel was ineffective for failing to secure an expert to conduct a DNA test to analyze the blood found on the towel in side his car.  Petitioner claimed that he suffered a flesh wound as a result of the victim's attack on him which supported his theory of self defense.  On remand for further fact finding, the trial court concluded that the blood on the towel did not lead to evidence of self defense and the determination of whose blood was on the towel would not have been dispositive as to Petitioner's theory of defense.   The record shows that the trial court granted Petitioner's motion for post-conviction DNA testing and the State filed a motion to stay the testing while they appealed the order.  The record does not show whether the motion to stay was granted, whether the DNA testing took place, or the results thereof.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes a particular investigation unnecessary.  *Strickland*, 466 U.S. at 691.  A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.  *See Gray v. Lucas*, 677 F.2d 1086 (5th Cir.1982); *United States v. Lewis*, 786 F.2d 1278 (5th Cir.1986); *Alexander v. McCotter*, 775 F.2d 595 (5th Cir.1985).

In this case, Petitioner merely contends that the State's DNA analysis showed that the

34

blood on the towel belonged to the victim and that an independent DNA test may have revealed that the blood was Petitioner's, supporting his position that he had been injured.  However, the evidence at trial showed that the victim did not have a weapon, was calm at the time of the incident, and that a person may injure his own hand when firing a weapon.

Assuming counsel was deficient for not ordering additional independent DNA testing, Petitioner has not demonstrated that had it been his blood on the towel it would have altered the outcome of the trial.  Even if Petitioner's blood were on the towel, that evidence alone is not sufficient to support a theory of self defense, in light of the contradictory evidence.  The jury was instructed on self defense, but nonetheless found Petitioner guilty.  Petitioner has also failed to demonstrate that the habeas court's denial of this claim was contrary to or an unreasonable application of federal law.

### D.  Ineffective Assistance of Appellate Counsel

Petitioner claims he received ineffective assistance of appellate counsel because counsel failed to raise the claims of trial court error [addressed herein Section III., subsection A], claims of prosecutorial misconduct [addressed herein Section III, subsection B] and claims of ineffective assistance of counsel [addressed herein Section III, subsection C].   Petitioner must demonstrate the two prong test set forth in *Strickland*.   To prove prejudice, Petitioner must show that but for counsel's deficient performance, he would have prevailed on appeal.  *Smith v. Robbins*, 528 U.S. 259, 286 (2000).  Appellate counsel need not raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal.  *Id*.

In this case, Petitioner makes no argument showing that had these issues been raised on appeal, he would have prevailed.  Nor has he shown that these issues were clearly stronger than

the ones actually raised on appeal. These points of error were raised in his state habeas application and found to be without merit. As demonstrated above, the same claims were found by this Court to be without merit. Petitioner has also failed to demonstrate that the habeas court's denial of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of federal law.

### E. Actions of the Appeals Court

Petitioner argues in his fifteenth and sixteenth grounds of error that the Court of Appeals erroneously upheld the trial court's refusal to allow Petitioner to: (1) present evidence of the victim's violent nature before the jury; and (2) cross examine witnesses about the victim's reputation with "have you heard" questions. Petitioner fails to elaborate on these grounds in his memorandum.

Causes of action under § 2254 are reserved for constitutional claims. See *Smith v. Phillips*, 455 U.S. 209, 221 (1982)("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution"). Petitioner inappropriately appears to be asking the habeas court to review an action of the state court of criminal appeals. The issue is whether the trial court committed constitutional error and whether the state habeas court's denial of any constitutional claims was contrary to or an unreasonable application of federal law, not review the decisions of the intermediate criminal appellate court.

### IV.  Recommendation

A thorough review of all files, records, and correspondence relating to the judgment being challenged conclusively shows that Petitioner is not entitled to the relief sought.

36

Accordingly, this Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docket No. 2) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that any pending motions for appointment of counsel be **DENIED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 10th day May, 2007.

_____
                    John Wm. Black
                    United States Magistrate Judge